## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

               Plaintiff,           Civil No. 22-2117 (JRT/TNL )

v.                       **CONSENT DECREE**

LARPENTEUR ESTATES APARTMENTS LLC;
MAJOR MANAGEMENT COMPANY; JENNIFER
COSTELLO; and MARK FRISCH.

               Defendants.

---

## I.    <u>INTRODUCTION</u>

On August 29th, 2022, the United States of America ("United States") filed this action on behalf of complainant Yusbith Murillo Ibarra ("Complainant") and her husband, aggrieved person James Clark, against Defendants Larpenteur Estates Apartments LLC, Major Management Company, Jennifer Costello, and Mark Frisch ("Defendants") to enforce the provisions of Title VIII of the Civil Rights Act of 1968 ("the Fair Housing Act"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq*. The United States filed its complaint following a Determination of Reasonable Cause and Charge of Discrimination issued by the Secretary of Housing and Urban Development and a timely notice of election filed by the Defendants. *See* 42 U.S.C. § 3612(o).

In its complaint, the United States alleges that Defendants discriminated in the rental of a dwelling and in the terms and conditions of rental because of Complainant's disability[1] by making housing unavailable and by refusing to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a person equal opportunity to enjoy a dwelling, in violation of the Fair Housing Act, 42

U.S.C. § 3604(f)(1), (f)(2) and (f)(3)(B).  The United States further alleges that individual Defendants Costello and Frisch violated 42 U.S.C. § 3604(c).  In its complaint, the United States seeks an order declaring Defendants' policies and practices discriminatory, enjoining Defendants from further discriminatory actions, and awarding damages.

The parties agree that, in the interest of conserving time and expense, this matter should be resolved without further litigation. Therefore, as indicated by the signatures below, the parties agree to the entry of this Consent Decree. This Consent Decree constitutes full resolution of the United States' claims that Defendants discriminated as alleged in the Complaint.

**THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED**:

## II.      GENERAL INJUNCTION

1.      Defendants, their officers, agents, employees, and all other persons or entities in active concert or participation with them, are hereby enjoined, with respect to the rental of dwellings currently owned or managed by them, from:

---

[1] The Fair Housing Act uses the term "handicap," *see* 42 U.S.C. § 3602(h), but consistent with modern usage, the government uses the term "disability" in this Consent Decree.

a.  Discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of disability, in violation of 42 U.S.C. § 3604(f)(1);

b.  Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

c.  Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and

d.  Making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, disability, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination in violation of 42 U.S.C. § 3604(c).

### III.   POLICY CONCERNING ASSISTANCE ANIMALS

2.     No later than thirty (30) days after entry of this Consent Decree, Defendants shall adopt the Assistance Animal Reasonable Accommodation Policy set forth in Attachment A and the Nondiscrimination Policy set forth in Attachment B for

implementation at Larpenteur Estates Apartments.

3.    The New Policies,[2] once adopted, shall supersede all existing policies, procedures, and resolutions concerning or affecting approval of reasonable accommodations for assistance animals at Larpenteur Estates Apartments.  All dwellings owned or managed by Defendants will adopt and adhere to the Nondiscrimination Policy in Attachment B.

4.    Within forty-five (45) days after entry of this Consent Decree, Defendants shall notify each resident of Larpenteur Estates Apartments in writing of the adoption and implementation of the New Policies. Notice may be sent via messenger delivery to each occupied unit or by first-class mail provided every household will get a print copy of the New Policies.

5.    Within thirty (30) days after entry of this Consent Decree, Defendants shall post and prominently display in each and every location where activity related to the management or rental of Defendants' dwellings occurs, a poster no smaller than 11 inches by 14 inches that indicates that all dwellings are available for rent on a nondiscriminatory basis.  The poster shall comply with the requirements set out in 24 C.F.R. Part 110.  It may also list additional protected classes covered by the Minnesota Human Rights Act.

_____

[2] Attachments A and B are collectively referred to as "the New Policies."

6.      No later than fourteen (14) days after adoption of the New Policies, Defendants shall apprise each Covered Individual[3] of his or her obligations under this Consent Decree and its attachments, including but not limited to the New Policies, and under the Fair Housing Act, 42 U.S.C. §§ 3601-3631.  Defendants shall furnish each Covered Individual with either a copy of this Consent Decree or a summary of this Consent Decree approved by the United States ("Approved Summary") along with copies of the attachments to the Consent Decree.  Each Covered Individual shall sign a statement in the form of Attachment C acknowledging that he or she has received, read, and understands the Consent Decree or its Approved Summary, and A, B and C of the attachments to the Consent Decree, and declaring that he or she will perform his or her duties in accordance with the Consent Decree and those attachments as well as the Fair Housing Act, 42 U.S.C. §§ 3601-3631.

7.      During the term of this Consent Decree, new Covered Individuals, shall: (a) be apprised of the contents of this Consent Decree its attachments, including but not limited to the New Policies, and of their obligations under the Fair Housing Act, 42 U.S.C. §§ 3601-3631, when their term, employment, or agency commences; (b) be provided

---

[3] For purposes of this Consent Decree, "Covered Individual" shall mean employee, agent, or any other person responsible for leasing, showing, and managing rental units at Larpenteur Estates Apartments. The term Covered Individual does not include full or part time caretakers, maintenance technicians, or other service contractors, agents, or vendors who are not involved in the leasing, showing, or management of units at Larpenteur Estates Apartments.

copies of this Consent Decree or its Approved Summary and attachments A, B, and C to the Consent Decree; and (c) execute the statement contained in Attachment C no later than five (5) days following their first day of employment.

8.     Major Management will require current employees or contractors who have responsibility related to the management or rental of units at its other managed property to be provided with a copy of the Nondiscrimination Policy in Attachment B no later than fourteen (14) days from entry of this Consent Decree. For employees or contractors who have responsibility related to the management of or rental of units at its other managed property and who are hired after entry of the Consent Decree, Major Management will provide each such person with a copy of the Nondiscrimination Policy in Attachment B no later than five (5) days following their first date of employment.

### IV.     <u>MANDATORY EDUCATION AND TRAINING</u>

9.     Within ninety (90) days of the entry of this Consent Decree, Defendants Jennifer Costello and Mark Frisch will attend, at the Defendants' expense, a training program regarding the Fair Housing Act, including its disability discrimination provisions. The training will be conducted by a qualified third party approved by the United States.

10.    Defendants will obtain from the trainer or training entity certificates of attendance. The certificate will include the name of the course, the date the course was taken, the subject matters covered in the course, and the length of the course and/or time within which the course was completed.

## V.   <u>REPORTING AND RECORDKEEPING</u>

11.     During the term of this Consent Decree, Defendants will notify and provide documentation to the United States of the following events within fourteen (14) days of their occurrence:

a.     The training attended pursuant to Paragraph 9, including the certification required in Paragraph 10;

b.     Any change to Defendants' rules or practices affecting the keeping of assistance animals at Larpenteur Estates Apartments;

c.     Any denial by Defendants of a request by a tenant or prospective tenant to keep an assistance animal, including the resident's name, e-mail, address, and telephone number, and the details of the request and the reason(s) for its denial;

d.     With the exception of requiring any animal owner to provide veterinary information on the animal, proof of current vaccination status, proof that an animal is spayed or neutered, and proof that the animal has any municipal license that may be required by the city of St. Paul, any additional conditions proposed or imposed by Defendants on a tenant or prospective tenant who keeps or requests to keep an assistance animal, including the resident's name, e-mail, address, and telephone number, and the details of the request and the reason(s) for any proposed conditions; and

e.      Any written complaint alleging disability discrimination in housing received by Defendants, including a copy of the written complaint itself and the name, e-mail, address, and telephone number of the complainant. Defendants will also promptly provide the United States with information concerning resolution of the complaint.

12.     During the term of this Consent Decree, Defendants will preserve all records relating to their obligations under this Consent Decree.  Representatives of the United States will be permitted, upon providing reasonable notice to counsel for the Defendants, to inspect and copy at reasonable times any and all records related to Defendants' obligations under this Consent Decree.

### VI.      MONETARY DAMAGES TO AGGRIEVED PERSONS

13.     No later than fourteen (14) days after the date of entry of this Consent Decree, Defendants will pay a total of twelve thousand and nine hundred dollars ($12,900) in damages to Complainant Yusbith Murillo Ibarra and aggrieved person James Clark. Defendants shall deliver this payment by certified mail to Liles Repp, Assistant United States Attorney, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

14.     As a prerequisite to receiving such payment, Complainant Yusbith Murillo Ibarra and aggrieved person James Clark will execute a release of all claims, legal or equitable, that they may have against Defendants relating to the allegations asserted in this Civil Action.  Such release will take the form of Attachment D.

## VII.   JURISDICTION, DURATION, MODIFICATION, AND REMEDIES

15.     The Parties stipulate, and the Court finds, that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

16.     This Consent Decree is effective immediately upon its entry by the Court.

17.     This Court will retain jurisdiction over this action and the parties thereto for the duration of this Consent Decree for the purpose of enforcing and modifying its terms. This Consent Decree will be in effect for a period of two (2) years from its effective date.

18.     Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the Parties.

19.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by Defendants to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including but not limited to, an order requiring performance of such act or deeming such act to have been performed, as well as an award of damages, costs and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

20.     All Parties will be responsible for their own attorney's fees and costs, except as otherwise provided in this Consent Decree.

Dated: October 11, 2022                    s/John R. Tunheim_____
at Minneapolis, Minnesota                  JOHN R. TUNHEIM
                                           United States District Judge

The undersigned hereby apply for and consent to the entry of this Consent Decree:

DATE: 8/30/2022                    ANDREW M. LUGER
                                   United States Attorney

                                   s/ Liles H. Repp
                                   LILES H. REPP
                                   Assistant U.S. Attorney
                                   Attorney ID# 0400692
                                   300 S. 4th St., #600
                                   Minneapolis, MN
                                   612-664-5600
                                   liles.repp@usdoj.gov

                                   Counsel for Plaintiff United States
                                   of America

DATE: 9/6/2022                     s/ Donna E. Hanbery_____

Donna E. Hanbery
Attorney ID# 0040332
Hanbery and Turner, P. A.
33 South Sixth Street, Suite 4160
Minneapolis, MN  55402
hanbery@hnclaw.com

*Counsel for Defendants*

**ATTACHMENT A**

**Assistance Animal**
**Reasonable Accommodation Policy**

The Federal Fair Housing Act and other state and local fair housing laws require that housing owners and managers provide reasonable accommodations for applicants and residents who have disabilities. The owner and managers of our company, and their employees, agents, and designees, are committed to granting reasonable accommodations when necessary to afford persons with disabilities the equal opportunity to use and enjoy a dwelling at any and all of their rental units.

Reasonable accommodations may include waiving or varying rules or policies to allow a resident with a disability to keep an "assistance animal." An assistance animal is an animal that does work or performs tasks for the benefit of a person with a disability, or provides emotional support or other assistance that may be necessary to afford the person an equal opportunity to use and enjoy housing ("Assistance Animal"). The most common Assistance Animals are dogs, although other animals may qualify as assistance animals. Assistance Animals are not considered "pets" under our company's policies. Our company recognizes the importance of Assistance Animals and is committed to ensuring that its tenants with Assistance Animals – whether owners, occupants, or renters – may keep them in their units.

If an applicant or resident with a disability requests a reasonable accommodation for an Assistance Animal, our company will determine whether the animal may be necessary to afford the resident an equal opportunity to enjoy living at the applicable property. In some cases, both the disability and the necessity for the Assistance Animal are obvious – for example, a dog guiding an individual who is blind or has low vision, or a dog pulling the wheelchair of a person with a mobility disability. If this is the case, no further inquiry will be made and our company will grant the resident the accommodation unless the presence of the animal (1) imposes an undue financial and administrative burden; (2) fundamentally alters the nature of our operations; or (3) would pose a direct threat to the health and safety of other people.

In the case of an applicant or resident who requests a reasonable accommodation for an Assistance Animal and the disability of the applicant or resident and/or the necessity for the Assistance Animal is not obvious, our company may require a written verification from a Health

or Social Service Professional[4] indicating that the applicant has a disability[5] and the presence of the animal may be necessary to provide the applicant or resident an equal opportunity to use and enjoy his/her apartment. In the event that an applicant or resident requests a reasonable accommodation to own more than one assistance animal, our company may ask in the verification if there is a separate disability, or separate disability related need to own more than one assistance animal for the same requesting individual.

Our company will not require:

i.      That the Assistance Animal have any special training or certification;

ii.     That the Assistance Animal be subject to breed or age restrictions;

iii.    That the Assistance Animal be required to wear a vest or other insignia that identifies it as an Assistance Animal; or

iv.     That the resident pay any fee, deposit, or other charge for keeping the animal, or obtain insurance as a condition of keeping the animal.

If our company seeks verification of a tenant's disability and the need for an Assistance Animal, it will not:

i.      Request whether a Health or Social Service Professional would be willing to testify in a court proceeding regarding the request for accommodation;

ii.     Require the Health or Social Service Professional to provide a curriculum vitae; or

iii.    Require an interview with the Health or Social Service Professional.

In processing requests for Assistance Animals, our company will take reasonable measures to protect the confidentiality of any information or documentation disclosed in connection with the requests. Such measures may include limiting access to such information to persons specifically designated to deal with requests for reasonable accommodations, who will disclose information only to the extent necessary to determine whether to grant the request, and keeping all written requests and accompanying documentation in a secure area, including the tenant file, if

---

[4] "Health or Social Service Professional" means a person who provides medical care, therapy or counseling to persons with disabilities, including, but not limited to, doctors, physician assistants, psychiatrists, psychologists, or social workers. The Health or Social Service Professional should have personal knowledge of their patient/client – i.e., the knowledge used to diagnose, advise, counsel, treat, or provide health care or other disability-related services to their patient/client.

[5] Under fair housing laws, a person with a disability is defined as a person who has a physical or mental impairment that substantially limits one or more major life activities, is regarded as having such an impairment, or has a record of such an impairment.

tenant files are kept in a secure area to which only those designated persons have access, except as otherwise required by law. The company may keep in its computer records or other reports information that an animal has been approved for the household.

A person with a disability may request a reasonable accommodation orally, but our company may ask the person with the disability to complete or assist in completing a "Form to Request An Assistance Animal" (attached to this Policy). Our company will evaluate the requested accommodation regardless of whether the person completes the written form, but the person must cooperate in providing all information needed to complete the form.

If the applicant requires assistance in completing the form, the Property Manager, leasing agent, or his or her designee will provide assistance or will fill out the form based on an oral request. Our company is using the form to record reasonable accommodation requests so that we can obtain only the information necessary to make a reasonable accommodation decision and not to obtain confidential information that we do not need to make a reasonable accommodation decision.

Once our company receives the request for an assistance animal and, if applicable, additional verifying information, it will provide a response within fourteen days. If a request is denied, an explanation for the denial will be included in the written notification of denial. If a person with a disability believes that a request has been denied unlawfully or that the response is delayed unreasonably, he or she may file a complaint with:

U.S. Department of Housing and Urban Development
Office of Fair Housing and Equal Opportunity
451 Seventh Street, SW
Washington, DC  20410
(800) 669-9777
http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/online-complaint


United States Attorney's Office-District of Minnesota
Attn: Civil Rights-Fair Housing
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**FORM TO REQUEST AN ASSISTANCE ANIMAL**

The Federal Fair Housing Act and other state and local fair housing laws require that housing owners and managers provide reasonable accommodations for applicants and residents who have disabilities. Our company and its employees, agents, and designees are committed to granting reasonable accommodations when necessary to afford persons with disabilities the equal opportunity to use and enjoy a dwelling at any and all of their rental units.

Under fair housing laws, a person is entitled to a reasonable accommodation if he or she has a disability that is defined as a physical or mental impairment that substantially limits one or more major life activities. The person also must show that he or she may need the accommodation because of the disability. Reasonable accommodations may include waiving or varying rules or policies to allow a resident to keep an assistance animal. An assistance animal is an animal that does work or performs tasks for the benefit of a person with a disability or provides emotional support or other assistance that may be necessary to afford the person an equal opportunity to use and enjoy housing ("Assistance Animal").

If you or someone associated with you has a disability and you believe that there is a need for an Assistance Animal as a reasonable accommodation for the person with a disability to use and enjoy a dwelling unit at our property, please complete this form and return it to the company. Please check all items that apply and answer all questions in Part 1 of this Form. If you have a disability that is obvious, and the need to own an assistance animal is obvious (such as a seeing eye dog) we will approve the request without seeking third-party verification.

If the disability is not obvious, or the need for an assistance animal is not obvious, we will ask that you complete Part 2 of this form identifying a health care or social service professional ("Provider") that has provided health care, therapy, or counseling to the applicant with a disability or resident seeking accommodation so that we may seek third-party verification. To ensure that this verification comes from the Provider and has not been altered or changed, Part 2 also asks for the name and address or fax number of the Provider and requests your consent to allow the Provider to answer certain questions regarding your animal request. If applicable, our company will mail or fax the request to the Provider within three days of receiving this form and your consent in Part B. In most cases our company will be able to respond to this request in writing within 14 days of receiving the request for an assistance animal and, if applicable, the verification from the Provider. Completion of the form by a Provider is not required for approval; the Provider may provide the information requested in another format. All information provided to the company in connection with this request will be kept confidential, except as otherwise required by law. If you require assistance in completing this form, please call the management office at (651-488-7376) for assistance or to make an oral request for a reasonable accommodation.

## PART 1: QUESTIONS FOR REQUESTOR

1.      Do you require assistance filling out this form?

□ Yes   □ No

If your answer is "Yes," and you do not have someone who can assist you, please ask <u>Jennifer Costello (651-488-7376)</u> to assist you in filling out this form.

If your answer is "No," continue on to Question No. 2.

2.      Today's Date: _____

3.      I am (please check one):

_____ **The person who has a disability and is requesting an Assistance Animal**.  If so, continue to Question 4.

_____ **A person making a request on behalf of or assisting the person with a disability** who needs an Assistance Animal.  Please fill out the information below:

　　　　Name of person filling out form: _____

　　　　Address: _____

　　　　Telephone number: _____

　　　　Relationship to person needing Assistance Animal:_____

4.      Name of person with a disability for whom a reasonable accommodation is being requested:

_____

Phone number: _____

Address: _____

5.      Identify the species of animal for which you are making a reasonable accommodation request, e.g., "dog," "cat":

_____

6.      Provide the name and physical description (size, color, weight, any tag and/or license) of the animal for which you are making a reasonable accommodation request:

_____

_____


_____     _____
Signature of person making request           Date


_____     _____
Signature of person with disability           Date

_____
Name of minor with a disability (if applicable)

Applicant Name:_____


## PART 2: CONSENT AND RELEASE FOR INFORMATION

The person named above as a person with a disability, and signing below, is an applicant or resident, or is the adult guardian of a minor child household member of an applicant/resident at:

Larpenteur Estates

1276 Larpenteur Avenue

West St. Paul, MN 55113

Fax: 651-488-1109

By my signature below, my health care or social service professional is authorized to provide the information requested on the next page of this form about me, or about the minor child.

_____

Print Name                                    Date

If information is requested for a minor, print minor's name below

_____

Minor's Name                                  Date

_____

Name of Provider

_____

Address for Health or Social Service Professional

_____

Fax number for Health or Social Service Professional

_____

Signature of applicant, resident, or adult guardian

## PART 3: THIRD PARTY VERIFICATION

***TO BE COMPLETED BY THE PHYSICIAN, PSYCHIATRIST, OR OTHER HEALTH OR SOCIAL SERVICE PROFESSIONAL:***

1.      Please provide a statement verifying that the person has an impairment that substantially limits one or more of the person's major life activities.

_____
_____
_____

2.      Please state whether the animal is necessary for the person to have an equal opportunity to use and enjoy housing or alleviate one or more of the effects of the person's disability. If so, please explain how it helps.

_____
_____
_____
_____

3.      Please state the date your professional relationship, treatment or services to the requester began. _____

Name: _____

Title: _____

Address: _____

Telephone: _____

_____          _____
Signature                                                      Date

***TO BE COMPLETED BY MANAGEMENT:***

Form accepted by: _____

_____          _____
Signature                                                      Date

18

# ATTACHMENT B

### Nondiscrimination Policy

It is our company policy to comply with Title VIII of the Civil Rights Act of 1968, as amended, (commonly known as the Fair Housing Act) and the Minnesota Human Rights Act by ensuring that apartments are available to all persons without regard to race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation. This policy means that, among other things, our company, and all of our agents and employees that have responsibility for renting, managing or administering any dwelling units must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants because of race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation. Our agents and employees may not:

A.  Refuse to rent, or negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation;

B.  Discriminate against any person in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation;

C.  Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation; or

D.  Represent to persons because of race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation that any dwelling is not available for inspection or rental when such dwelling is in fact so available.

Our commitment to comply with the fair housing laws includes an affirmative duty to provide reasonable modifications and accommodations to qualified applicants and residents with disabilities. We will permit disabled persons, at their expense, to make reasonable modifications of existing premises, both the common area and the unit to be occupied by the disabled person, if modifications may be necessary to afford the disabled person full enjoyment of the premises. Further, we will make reasonable accommodations in our rules, policies, practices, or services when accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

This Policy prohibits any form of harassment based on any of the protected classes identified above and specifically prohibits any harassment based on sex including any request for sexual attention or favors or conduct that could create a hostile living environment for residents based on sex or any protected category. Words or conduct that are related to any protected category, and are offensive to a recipient or reasonable person, based on a persons' protected status, are prohibited and a violation of policy.

Applicants, residents, and employees, are encouraged to report any violation of this Policy to a supervisor or other officer or manager of the Company for investigation and appropriate action. No retaliatory action will be taken against any person who reasonably and in good faith reports words or conduct which he or she believes may violate this Policy. No retaliatory action will be taken against any individual who in good faith assists or participates in any investigation, proceeding, or hearing relating to a harassment or discrimination complaint.

Any action taken by an agent or employee that results in the unequal service, treatment or behavior to applicants or tenants on the basis of race, color, creed, religion, national origin, disability, familial status, sex, marital status, status with regard to public assistance or sexual orientation may constitute a violation of state and federal fair housing laws.

Any agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action.

**ATTACHMENT  C**
**Employee Acknowledgement**

I certify that I have received a copy of the Consent Decree entered by the Court in

*United States of America v. Larpenteur Estates Apartments LLC et al.*, 22-cv-02117-JRT-

TNL (D. Minn.) or a copy of the Approved Summary as well as the attachments to the

Consent Decree.  I further certify that I have read and that I understand these documents;

that any questions I had concerning them were answered; I understand my legal

responsibilities and shall comply with those responsibilities.

_____
(Signature)

_____
(Printed name)

_____
(Title)

_____
(Date)

**ATTACHMENT  D**
**Release**


In consideration of the Consent Order entered in *United States of America v. Larpenteur Estates Apartments LLC et al.*, 22-cv-02117-JRT-TNL (D. Minn.), and of the payment of the sum of $12,900 pursuant to that Consent Order, I hereby release Defendants Larpenteur Estates Apartments LLC; Major Management Company; Jennifer Costello; and Mark Frisch, who are named in this Civil Action, from any and all liability for any claims, legal or equitable, I may have against Defendants Larpenteur Estates Apartments LLC; Major Management Company; Jennifer Costello; and Mark Frisch arising out of the issues alleged in this Civil Action as of the date of the entry of the Consent Decree.  I fully acknowledge and agree that this release of Larpenteur Estates Apartments LLC; Major Management Company; Jennifer Costello; and Mark Frisch will be binding on my heirs, representatives, executors, successors, administrators, and assigns.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.


Dated:                                              _____
                                                          Yusbith Murillo Ibarra


Dated:                                              _____
                                                          James Clark